UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDACE LEE MOE,<br>Plaintiff,<br>v.<br>FRANK BISIGNANO, Commissioner of Social Security,<br>Defendant. | Case No. 2:25-cv-2833-JDP (SS)<br><br>ORDER |

Plaintiff challenges the final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. Both parties have moved for summary judgment. ECF Nos. 10 & 12. For the reasons discussed below, the court grants plaintiff's motion, deny the Commissioner's motion, and remands for further proceedings.

**Standard of Review**

An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards have been applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process, the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

In August 2022, plaintiff filed an application for a period of disability and DIB, alleging disability beginning October 7, 2020. Administrative Record ("AR") 204. This application was denied initially and on reconsideration. AR 95-96, 106-109, 112-14. Plaintiff requested and received a hearing before an ALJ. AR 115-19. On May 2, 2024, the ALJ issued a decision denying plaintiff's disability claims. AR 14-30.

Specifically, the ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since October 7, 2020, the alleged onset date.

3. The claimant has the following severe impairments: congestive heart failure with treatment, non-ischemic cardiomyopathy, hypertension, diabetes, depression, bipolar disorder, anxiety, and post-traumatic stress disorder (PTSD).

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

* * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of light work as defined in 20 CFR 404.1567(b), except as follows. The claimant is precluded from all ladders, ropes, and scaffolds climbing, and all dangerous work hazards exposure. She is precluded from all exposure to extreme heat and humidity conditions. The claimant is limited to frequent, but not constant, handling, fingering, and feeling tasks. She is limited to routine, simple work tasks, work not requiring a production quota pace (i.e. assembly line environment where one's work impacts work down the line), and work involving only occasional required work interactions with coworkers, supervisors, and the public. The claimant will be off task up to 3% of workday due to momentary symptom distractions.

* * *

6. The claimant is unable to perform any past relevant work.

* * *

7. The claimant was born [in] 1980, and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has a limited education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

* * *

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 7, 2020, through the date of this decision.

AR 20-29 (citations to the code of regulations omitted).

Plaintiff requested review by the Appeals Council, which denied the request. AR 1-3. She now seeks judicial review under 42 U.S.C. § 405(g).

**Analysis**

Plaintiff and the Commissioner raise two arguments each. Plaintiff claims that: (1) the ALJ failed to provide specific, clear, and convincing reasons for discounting her allegations of mental dysfunction; and (2) the ALJ failed to properly evaluate the examining medical source opinion of the consultative psychiatrist. ECF No. 9 at 4. The Commissioner raises two issues as well: "(1) [w]hether the ALJ reasonably discounted Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms based on conflicts with the objective medical evidence, her own statements to care providers, and the medical source statements or record; and (2) [w]hether substantial evidence supports the ALJ's assessment of Plaintiff's work-related mental restrictions relating to the assessed mild-to moderate and moderate limitations." ECF No 12 at 2.

The court finds that summary judgment is not appropriate on any of the claims raised, however, the court's review of the record reveals that the ALJ improperly discounted plaintiff's allegations of her physical symptoms—an issue not raised by the parties in their initial briefs. While the court generally does not consider unraised issues, courts in this Circuit have recognized an exception to that general principle in Social Security cases. As one court explained:

> Ordinarily, where a party fails to raise a nonjurisdictional issue, [the court] won't consider it—and it certainly won't raise the issue sua sponte as grounds for granting summary judgment. But appeals from a denial of Social Security benefits differ from ordinary civil litigation. The underlying claims process is nonadversarial. *Sims v. Apfel*, 530 U.S. 103, 110[] (2000). Although claimants carry the burden of demonstrating that they qualify for benefits, they aren't left entirely to their own devices, and lapses of pleading or

> procedure can't be used to withhold benefits a claimant is otherwise clearly entitled to. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 n.3 (9th Cir. 1999); [*Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)]. Likewise, at the appeals stage, the claimant must make his own arguments for remand, but that doesn't relieve the district court of its duty to make "a full review of the facts" and "an independent determination as to whether the [Commissioner's] findings are supported by substantial evidence." *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985). In this "beneficent" and "tolerant" context, there is no reason to treat the failure to raise an error as reason for actively ignoring it, as the Commissioner suggests. *Ariz. State Dep't of Pub. Welfare v. Dep't of Health, Educ. & Welfare*, 449 F.2d 456, 472 (9th Cir. 1971); *Hess v. Sec'y of Health, Educ. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). The scattered cases confronting this question have reached similar conclusions.

*Farley v. Colvin*, 231 F. Supp. 3d 335, 339 (N.D. Cal. 2017) (collecting cases). The *Farley* court further analogized a district court's role in Social Security matters to that of an appellate court, recognizing that "[t]he Ninth Circuit, for example, 'will review an issue not present in an opening brief' for good cause shown, to prevent a manifest injustice, or where failure to raise the issue hasn't prejudiced the opposing party." *Id*. at 341 (quoting *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992)). As the Supreme Court noted in *Silber v. United States*, 370 U.S. 717, 718 (1962) (per curiam), appellate courts may notice errors to which no exception has been taken if they seriously affect the fairness, integrity, or public reputation of judicial proceedings.

Since *Farley*, other courts in this Circuit have similarly exercised the authority to *sua sponte* identify errors in an ALJ's decision and remand the matter on that basis. *See Alex P. v. King*, No. 23-cv-6238-SK, 2025 WL 1753508, at *6 n.5 (N.D. Cal. Feb. 19, 2025); *Miguel S. v. O'Malley*, No. 23-cv-1943-MMA-DDL, 2024 WL 5184292, at *2 (S.D. Cal. Dec. 20, 2024); *Ludmila N. A. v. Comm'r of Soc. Sec.*, No. 22-cv-6089-RMI, 2024 WL 1077325, at *3 n.3 (N.D. Cal. Mar. 12, 2024); *George M. v. Kijakazi*, No. 3:21-cv-0203-TMB, 2022 WL 2792192, at *9 n.107 (D. Alaska July 15, 2022); *John N. v. Berryhill*, No. 5:18-cv-1935-KES, 2019 WL 1861311, at *5 n.2 (C.D. Cal. Apr. 25, 2019); *Barbera v. Acting Comm'r of Soc. Sec. Admin.*, No. 17-cv-3862-PHX-ESW, 2018 WL 6258676, at *4 n.5 (D. Ariz. Nov. 30, 2018).

In line with the above authority, the court ordered supplemental briefing on the issue of whether the ALJ offered specific, clear, and convincing reasons for discounting plaintiff's testimony concerning her physical disabilities. ECF No. 17. Both parties submitted simultaneous briefing. ECF Nos. 18 & 19.

As an initial matter, the Commissioner argued that the court's request for supplemental briefing on the issue runs afoul of the "party presentation" rule.[1] ECF No. 19 at 2. The court finds that the rule does not prohibit it from reaching the issue because (1) plaintiff tangentially raised the Commissioner's erroneous assessment of her symptom testimony, and (2) because plaintiff and the Commissioner were afforded an opportunity to brief the issue. *See* ECF No. 9 at 4. Therefore, the court finds that the Commissioner has had "a fair opportunity to present his position" regarding these arguments. *See Wood v. Milyard*, 566 U.S. 463, 472 (2012). Accordingly, the issue is properly before the court for resolution. *See Koi Design LLC v. Marron Laws., APC*, No. 23-55704, __ F.4th __, 2026 WL 2263916, at *8 (9th Cir. Aug. 6, 2026) (holding that the opposing party had proper notice of "theory" of summary judgment under Federal Rule of Civil Procedure 56(f)(2) where its filing addressed that theory).

The court will now address whether the ALJ improperly discounted plaintiff's allegations of her physical symptoms.

On July 25, 2024, plaintiff testified before the ALJ about her symptoms. AR 40. She stated that, in February 2019, she entered the hospital with congestive heart failure and then "went straight back to work and continued as long as [she] could." AR 44-45. Plaintiff worked as a hotel manager until October 7, 2020, when she could no longer do her job duties, as she "wasn't feeling well . . . [and] was really lethargic." AR 44. The ALJ stated that the records showed that

[1] In our adversarial system of adjudication, we follow the "principle of party presentation" meaning that "in both civil and criminal cases, in the first instance and on appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (citation modified). "[A]s a general rule, our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* at 375-76 (citation modified).

plaintiff was "doing much better" than when she was hospitalized in 2019. AR 45-46. Plaintiff disagreed, testifying that she was "tired a lot." AR 46. She stated, "I'm exhausted and then the medications, I got side effects. And I get wiped out after just doing simple tasks like cleaning the floor in 20 minutes. I have to sit down or rest. My legs feel weak often and I'm short of breath a lot." AR 47. Later plaintiff testified that she would get out of breath if she carried more than ten pounds, because she would get "wiped out easily." AR 54. Plaintiff testified that she does not really cook anymore: "I'm lucky if I cook a 20 minute meal dinner anymore." *Id.* After 20 minutes cleaning the floor, plaintiff stated that she was "red faced, out of breath." *Id.*

To evaluate a claimant's subjective testimony, an ALJ must engage in a two-step process. First, an ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). "[Plaintiff] need only show that it could reasonably have caused some degree of the symptom." *Id.* Here, the ALJ found that plaintiff's medical impairments could reasonably be expected to cause her symptoms.[2] AR 24.

Second, absent evidence of malingering, an ALJ must offer "specific, clear and convincing reasons" for rejecting a claimant's testimony. *Garrison*, 759 F.3d at 1014-15; *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). In her decision, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record . . . ." AR 24. The ALJ again stated that "[plaintiff's] statements about the intensity, persistence, and limiting effects of his

---

[2] The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof. *Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991). Neither must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. *Id.* at 345. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon. *See Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986) ("[W]e have never required that the medical evidence identify an impairment that would make the pain inevitable."); *see also Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

or her symptoms, they are inconsistent because the medical evidence of record does not support a finding that these issues would preclude the claimant from working." AR 24. The ALJ also asserted that the "objective evidence of record does not fully support the claimant's subjective allegations of disability." AR 27. Without more, these statements are insufficient to explain the ALJ's reasoning. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1100, 1102-03 (9th Cir. 2014).

The ALJ summarized plaintiff's testimony at AR 24 but only specifically identified two statements (set forth at AR 27) that she found unsupported by the objective medical records. As the ALJ must identify the testimony from plaintiff that she found not to be credible and offer "specific, clear and convincing reasons" for rejecting plaintiff's symptom testimony, the court will confine its analysis to the two statements that the ALJ specified and the medical evidence that she cited as "not fully support[ing]" that testimony. *See Garrison*, 759 F.3d at 1014-15; *see also Lambert*, 980 F.3d at 1277. The ALJ noted that plaintiff testified that "she has issues doing things around the house due to getting out of breath, but she can make a 20-minute meal and can do the floors then needs to rest."[3] *Id.* The ALJ also noted that plaintiff "stated that she can drive, but no long distances."[4] AR 27.

To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284.

The ALJ cited three medical records that, in her assessment, "do not fully support" plaintiff's subjective allegations of disability. AR 27. The ALJ cited a cardiology treatment

---

[3] Plaintiff testified, "I haven't really, haven't cooked, really . . . . My daughter stepped in. I try to do the floors. I'll do, like, I'll get 20 minutes in and I'm red-faced, out of breath." AR 54.

[4] Plaintiff testified that she could not drive long distances because of the side-effects of her medication, which make her "worried being behind the wheel." AR 57. She also testified that if she tries to drive a long distance, she "get[s] tired out or [her] legs [begin] hurting." *Id.*

record from August 11, 2021, which the ALJ interpreted as showing that plaintiff's "symptoms improved remarkably, and she was able to return to her usual exercise ability." The court has reviewed this record, which documents plaintiff's first visit to a new cardiology office on August 11, 2021, after a period without insurance. *See* AR 373. The August 11, 2021 note, AR 373, refers to and summarizes plaintiff's emergency department treatment for her congestive heart failure in February 2019, over two years prior.[5] The "remarkable" improvement cited by the ALJ as inconsistent with plaintiff's symptom testimony occurred in response to that emergency department treatment in February 2019, over eighteen months prior to the onset of disability on October 7, 2020. Accordingly, this note is irrelevant to assessing plaintiff's testimony regarding her disability.

The ALJ also cites a March 2022 cardiology progress note, which stated that plaintiff "continued doing well with well controlled blood pressure" and that she had "good and well-preserved walking capacity." AR 27; *see also* AR 383-84. The ALJ does not explain how this note undermines the specific testimony that she identified at page 27 of the administrative record regarding plaintiff's inability to cook for more than 20 minutes, drive long distances, or clean the floor without having to rest. A person need not be totally incapacitated in order to establish that he or she is disabled. *See Garrison*, 759 F.3d at 1016 (noting that "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day"). Likewise, the Court of Appeals

[5] The emergency department records from February 2019 document plaintiff's admission for shortness of breath, chest pressure, and palpitations. *See* AR 1032. She was treated with medication, admitted to the cardiac unit for two days, and diagnosed with congestive heart failure and hypertension. AR 1058. The full text of the August 11, 2021 note referring to this hospital visit states: "Patient is a 40-year-old woman with a history of nonischemic cardiomyopathy who was admitted to Sutter Roseville Medical Center 2 years ago with increasing shortness of breath and lower extremity edema. She reports that she underwent a nuclear stress test and an echocardiogram and was told that her heart function was diminished as a result of severe hypertension. She was started on medications for high blood pressure and diuretics for lower extremity edema which she took consistently. Her symptoms improved remarkably and she was able to return to her usual exercise ability." AR 373. The note continues to explain that due to a change in insurance, plaintiff was referred to a new doctor for a cardiac assessment, leading to the August 11, 2021 visit. *Id.*

recognizes that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Id.* at 1016 (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). Finally, a note that plaintiff "continued doing well" does not provide much information of her capacity without an understanding of how the notetaker assessed her performance and how she had been doing prior to that visit. *See Martinez v. Comm'r of Soc. Sec.*, No. 1:20-cv-0439-GSA, 2021 WL 2915018, *6 (E.D. Cal. Jul. 12, 2021) ("[T]his Court has observed that 'fairly stable' and 'doing well' are relative terms."); *C.P. v. Soc. Sec. Comm'r*, No. 24-cv-06986-LJC, 2026 WL 874108, *9 (N.D. Cal. Mar. 30, 2026) (reasoning that a plaintiff can both respond positively to treatment and still experience symptoms, thus improvement is thus not a clear and convincing reason to discount a plaintiff's testimony about her function).

Further, that cardiology progress note was followed by medical reports regarding plaintiff's shortness of breath. The ALJ noted that "September 14, 2022, cardiology records note the claimant reporting intermittent episodes of pressure-like chest pain, chronic intermittent dyspnea on exertion, and intermittent episodes of palpitations lasting up to 30 minutes."[6] AR 25; *see also* AR 451. Although the ALJ noted that the physical exam was normal, the ALJ did not note that plaintiff's electrocardiogram was abnormal on that date. *See* AR 451, 454.

To evaluate the intensity and persistence of an individual's symptoms and determine the extent to which they limit her ability to perform work-related activities, an ALJ must "examine the entire case record . . . ." Social Security Ruling 16-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims (March 28, 2016). However, the ALJ did not discuss additional medical record evidence of fatigue and dyspnea on exertion. On October 10, 2022, plaintiff told her primary care physician that "she is getting tired really easily, for example, walking around the store." AR 538. On October 13, 2022, plaintiff underwent a treadmill exercise stress test, and administering medical staff noted, "Patient had significant dyspnea with exercise" and "significant shortness of breath and fatigue" on the test. AR 460-61. On October 27, 2022, a medical note

---

[6] "Dyspnea" is "labored or difficult breathing." *See* https://www.tabers.com/tabersonline/view/Tabers-Dictionary/742770/all/dyspnea (last checked Sept. 17, 2026).

documents, "Patient has been having worsening symptoms of her [congestive heart failure] such as extreme fatigue, dizziness, and severe dyspnea." AR 823. Plaintiff "endorse[d] shortness of breath at rest, shortness of breath with activity, wheezing, dizziness, excessive sleepiness during the day . . . ." *Id.* A pulmonary progress note from November 10, 2022, states, "Shortness of breath, Dyspnea on exertion." AR 820. On December 6, 2022, plaintiff was diagnosed with dyspnea, and a pulmonary study indicated a possible "early obstructive, restrictive defect." AR 808, 812. On May 2, 2023, plaintiff reported "chronic, intermittent dyspnea on exertion with walking less than 1 block that last for few minutes and resolves with rest." AR 610. On August 16, 2023, a cardiologist noted that although plaintiff "did not have chest pain during her treadmill exercise stress test. She noted to have dyspnea on exertion." AR 657. The court finds that the ALJ erred by failing to consider the entire medical record in determining whether plaintiff's symptom testimony was consistent with objective medical evidence.

Finally, the ALJ cited a January 2023 mental health treatment record that noted that plaintiff was taking care of her stepfather. AR 27. Again, the ALJ did not explain how this fact undermined plaintiff's testimony. Caring for an aged relative, without specific information regarding what that care consisted of, does not reflect an ability to engage in full-time competitive work activity. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (noting that "the mere fact that [the plaintiff] cares for small children does not constitute an adequately specific conflict with her reported limitations").

The ALJ did not ask plaintiff about the care she provided for her stepfather and thus did not develop a record that might have undermined or confirmed plaintiff's claimed limitations. "In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (citing *Thompson v. Schweiker*, 665 F.2d 936, 941 (9th Cir. 1982). The single notation regarding plaintiff's care for her stepfather was ambiguous, and the "ALJ's duty to develop the record is triggered by ambiguous evidence or a record that is inadequate to allow for proper evaluation of the evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

The ALJ summed up the three medical records she cited as showing that "with ongoing treatment, [plaintiff] was generally stable, and her impairments would be accommodated by the above residual functional capacity." AR 27. As discussed above, the three documents did not support that assessment. The first document discussed plaintiff's response to treatment starting in February 2019, approximately eighteen months before the onset of her disability. The second document showed that, with treatment, plaintiff's hypertension was responsive to medication, and she retained "good" walking capacity. However, as the ALJ recognized, plaintiff suffered from other severe impairments, including congestive heart failure, non-ischemic cardiomyopathy, diabetes, and mental impairments, and this single medical record does not support the ALJ's finding that with ongoing treatment, all of plaintiff's impairments were stable. *See* AR 20. In fact, the ALJ's summary of plaintiff's medical history demonstrates that her mental health disorders waxed and waned, requiring multiple changes in medication. *See* AR 26-27. The third document indicated that she cared for her stepfather without explaining what those activities consisted of. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("The ALJ must make specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination . . . .") (cleaned up).

Based on the foregoing, the court finds that the ALJ erred by rejecting plaintiff's testimony absent clear and convincing reasons. The court finds that, although this issue was not precisely raised in plaintiff's motion, a manifest injustice would result if the court did not consider the issue. *See Broome v. Comm'r of Soc. Sec. Admin.*, No. 24-cv-0484-TUC-AMM, 2025 WL 2940302, at *8 (D. Ariz. Feb. 27, 2025). Accordingly, the court remands this matter for further proceedings. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted); *Treichler*, 775 F.3d at 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 10, is GRANTED.
2. The Commissioner's cross-motion for summary judgment, ECF No. 12, is DENIED.
3. The matter is remanded for further proceedings consistent with this order.
4. The Clerk of Court is directed to enter judgment in plaintiff's favor and close this case.

IT IS SO ORDERED.

Dated: September 24, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE